ctronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

# IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

| | | |
|---|---|---|
| Susan McGann, Mary Lowe, Joseph Lumetta, Steven Kane, Darrius Stewart, Sarah Lamb, Steve Skurat, Kristen MacDonald, and John Gaffigan, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | Cause No. 1322-CC00800<br><br>Division: 1 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| Schnuck Markets, Inc., a Missouri Corporation, | ) ) ) | |
| Defendant. | ) ) | |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of September 26, 2013, is made and entered into by and among the following Settling Parties (as defined below): (i) Susan McGann, Mary Lowe, Joseph Lumetta, Steven Kane, Darrius Stewart, Sarah Lamb, Steve Skurat, Kristen MacDonald, and John Gaffigan ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through Ben Barnow, Barnow and Associates, P.C., and John S. Steward, Steward Law Firm LLC (together, "Proposed Co-Lead Settlement Class Counsel" or "Class Counsel"); and (ii) Schnuck Markets, Inc. ("Schnucks"), by and through its counsel of record, Theodore Kobus, Daniel Warren, Paul Karlsgodt, and Craig Hoffman of Baker & Hostetler LLP, and Kevin Hormuth of Greensfelder, Hemker & Gale, P.C. The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

## I.   THE LITIGATION

On March 30, 2013, Schnucks announced that its computer systems had been compromised by an individual or group of individuals who had planted a malicious computer code on its systems (the "Security Incident"). The Security Incident involved the insertion of malicious computer code that targeted data in the magnetic stripe of payment cards swiped at certain affected Schnucks stores. Subsequently, a number of lawsuits, including this lawsuit, were filed asserting claims against Schnucks relating to the Security Incident.[1]

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Schnucks relating to the Security Incident, by and on behalf of Representative Plaintiffs and Settlement Class Members (as defined below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against Schnucks relating to the Security Incident (collectively, the "Litigation").

## II.   CLAIMS OF REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLEMENT

Representative Plaintiffs believe the claims asserted in the Litigation, as set forth in the petitions, have merit. Representative Plaintiffs and Proposed Co-Lead Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Schnucks through motion practice, trial, and potential appeals. They have also taken into account the uncertain outcome and risk of further

---

[1] *See Domiano v. Schnuck Markets, Inc.*, Case No. 4:13-cv-00682-NAB (E.D. Mo.); *Akelaitis v. Schnuck Markets, Inc.*, Case No. 3:13-cv-50142 (N.D. Ill.); *Rippy v. Schnuck Markets, Inc.*, Case No. 3:13-cv-00471 (S.D. Ill.); *Atteberry v. Schnuck Markets, Inc.*, Case No. 13-cv-2112 (C.D. Ill.); *Castellano v. Schnuck Markets, Inc.*, Case No. 4:13-cv-01201-RWS (E.D. Mo.).

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

litigation, as well as the difficulties and delays inherent in such litigation. Proposed Co-Lead Settlement Class Counsel are highly experienced in data breach litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Schnucks denies each and all of the claims and contentions alleged against it in the Litigation. Schnucks denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, Schnucks has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Schnucks also has taken into account the uncertainty and risks inherent in any litigation. Schnucks has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Representative Plaintiffs, individually and on behalf of the Settlement Class, by and through Proposed Co-Lead Settlement Class Counsel, and Schnucks that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members

602535484.13

who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1.    Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Agreement" or "Settlement Agreement" means this agreement.

1.2    "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution process.

1.3    "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.4    "Claims Administrator" means Garden City Group, Inc., or such other company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation, as may be jointly agreed upon by the Settling Parties and approved by the Court.

1.5    "Claims Referee" means a third party designated by agreement of the Settling Parties and approved by the Court to make final decisions about disputed claims for settlement benefits.

1.6    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.7    "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.8    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.9 hereof have occurred and been met.

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

1.9    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or incentive award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.10    "Identifying Information," for the purposes of this Settlement Agreement, means any name or number that may be used, alone or in conjunction with any other information, to identify a specific person, including any—

    1)    name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

    2)    unique electronic identification number, address, or routing code other than a credit card number or credit card expiration date; or

    3)    telephone number (mobile, fax, or land line) or email address.

1.11    "Identity Theft" as used in this Settlement Agreement means fraud committed using any of the Identifying Information of another person without authority.  Identity Theft as used in this Settlement Agreement does *not* include payment card fraud on a preexisting payment card account (i.e., the unauthorized use of payment card information to make fraudulent charges on the payment card account associated with that payment card information), because payment card fraud is covered elsewhere in this Settlement Agreement.

1.12   "Judgment" means a judgment rendered by the Court, in the form attached hereto as Exhibit G, or a judgment substantially similar to such form.

1.13   "Notice Specialist" means Hilsoft Notifications or such other notice specialist with recognized expertise in class action notice generally and data breach litigation specifically, as may be jointly agreed upon by the Settling Parties and approved by the Court.

1.14   "Opt-Out Date" means the date by which Settlement Class Members must mail their requests to be excluded from the Settlement Class in order for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.15   "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.16   "Plaintiffs' Counsel" means Proposed Co-Lead Settlement Class Counsel and Joseph V. Neill, Attorney at Law, and Geoffrey S. Meyerkord, Meyerkord & Meyerkord, LLC.

1.17   "Preliminary Approval Order" means the Order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class. The Settling Parties' proposed form of Preliminary Approval Order is attached hereto as Exhibit F.

1.18   "Proposed Co-Lead Settlement Class Counsel" and "Class Counsel" mean Ben Barnow, Barnow and Associates, P.C., and John S. Steward, Steward Law Firm LLC.

1.19   "Related Entities" means Schnucks' past or present directors, officers, employees, principals, agents, attorneys, insurers, predecessors, successors, parents, subsidiaries, divisions and related or affiliated entities, and includes, without limitation, any Person related to such entity who is, was or could have been named as a defendant in any of the actions in the

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.20    "Released Claims" shall collectively mean any and all claims and causes of action including, without limitation, any causes of action under 18 U.S.C. § 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against Schnucks or its Related Entities based on, relating to, concerning or arising out of the Security Incident and alleged theft of the Personal Information or the allegations, facts, or circumstances described in the Litigation.  Released Claims shall not include the right of any Settlement Class Member or Schnucks or its Related Entities to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.21    "Released Persons" means Schnucks and its Related Entities.

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

1.22    "Representative Plaintiffs" means Susan McGann, Mary Lowe, Joseph Lumetta, Steven Kane, Darrius Stewart, Sarah Lamb, Steve Skurat, Kristen MacDonald, and John Gaffigan.

1.23    "Security Incident" means the cyber-attack against Schnucks' payment card processing system during the period commencing December 9, 2012 and ending March 30, 2013.

1.24    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.25    "Settlement Class" means all persons who made an authorized in-store purchase using a credit or debit card at a Schnucks store between December 9, 2012 through and including March 30, 2013. The Settlement Class specifically excludes: (i) Schnucks and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.26    "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.27    "Settling Parties" means, collectively, Schnucks and Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.28    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Representative Plaintiff, does not know or suspect to exist in his favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement. With respect to any

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.29    "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

2.    **Settlement Benefits**

2.1    Expense Reimbursement. All Settlement Class Members who submit a valid claim using the claim form attached hereto as Claim Form A (Exhibit A to this Settlement Agreement) are eligible for the following out-of-pocket expenses, not to exceed $175.00 per Settlement Class Member, that were incurred as a result of the Security Incident: (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) other unreimbursed fees related to fraudulent charges or credit card or debit card reissuance; (vii) unreimbursed over-limit fees; (viii) long distance telephone charges; (ix) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Security Incident) and text messages (if charged by the message and incurred solely as a result of the Security Incident); (x) unreimbursed charges from banks or credit card companies; (xi) postage; (xii) interest on payday loans due to card cancelation or due to over-limit situation; (xiii) up to three hours of documented lost time spent dealing with replacement card issues or in reversing fraudulent charges (calculated at the rate of $10 per hour), but only if at least one full hour was spent, and only if the time can be documented with reasonable specificity by answering the questions on the claim form; (xiv) costs of credit report(s) purchased by Settlement Class Members between March 15, 2013 and the date of the Preliminary Approval Order (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident); and (xv) costs of credit monitoring and identity theft protection (not to exceed $80) purchased by Settlement Class Member between March 15, 2013, and the end of the Claims Period (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident and not for other purposes with proof of purchase and payment).

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

Settlement Class Members seeking reimbursement under this ¶ 2.1 must complete and submit a written claim in the form of Claim Form A to the Claims Administrator within 120 days after first date of publication of notice. The claim form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of their knowledge and belief, and is being made under penalty of perjury. Claim form submissions must also include reasonable documentation that the out-of-pocket expenses and charges claimed were both actually incurred and more likely than not arose from the Security Incident. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.5.

2.2    <u>Cash Payments for Claimants Who Were Notified of Fraudulent Charges Which Were Later Reversed</u>. Any Settlement Class Member who submits a valid claim showing, to the best of his or her knowledge and belief, under penalty of perjury, that an unauthorized charge was made on his or her credit card or debit card, along with a copy of the Settlement Class Member's applicable credit card or debit card statement(s) (which may be redacted of all information other than the unlawful charge(s), the date(s) of same), and the Settlement Class Member's name and address, showing and identifying the fraudulent charges posted to the credit card or debit card account and showing that those charges were reversed or credited, is eligible for a cash payment in an amount of $10 for each credit card or debit card on which one or more fraudulent charges were posted as a result of the Security Incident.

Settlement Class Members who submit a claim under this ¶ 2.2 may also submit a claim for any other benefit or reimbursement available to such Settlement Class Member under any other provision of this Settlement Agreement. Settlement Class Members who claim eligibility for this $10 cash payment in addition to out-of-pocket expenses described in ¶ 2.1 may claim this additional payment on Claim form A.  Settlement Class Members who do not claim out-of-

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

pocket expenses may claim benefits under this ¶ 2.2 by submitting a claim in the form attached hereto as Claim Form B (Exhibit B to this Settlement Agreement). Settlement Class Members meeting the requirements under this paragraph shall have 120 days after the first date of publication of notice to submit a claim for benefits under this paragraph to the Claims Administrator. Disputes as to such claims are to be resolved pursuant to the provisions stated in ¶ 2.5.

2.3    Identity Theft Reimbursement. Schnucks shall reimburse, as provided for below, each Settlement Class Member in the amount of his or her proven loss, but not to exceed $10,000 per claim (and only one claim per Settlement Class Member), for a monetary out-of-pocket loss that is claimed and proven by the Settlement Class Member to have occurred more likely than not as a result of the Security Incident, regardless of whether said Settlement Class Member elects to make a claim for any other benefit available under this Settlement Agreement, and further that: (a) it is an actual, documented, and unreimbursed monetary loss; (b) resulted from Identity Theft proven to be more likely than not caused by the Security Incident; (c) occurred during the time period from December 9, 2012 through and including the end of the applicable claims period (see 2.3.2, infra); and (d) the claimant reported the Identity Theft to law enforcement and can produce a written law enforcement report relating to the Identity Theft.

2.3.1    Claimants seeking Identity Theft Reimbursement must complete and submit the claim form attached hereto as Claim Form C (Exhibit C to this Settlement Agreement) under penalty of perjury to the Claims Administrator, together with proof of such losses. In order to prevent claims for out-of-pocket losses or fraudulent credit card charges from being erroneously submitted on the claim form in Exhibit C, the claim form for Identity Theft Reimbursement in Exhibit C shall not be made available until a claimant first makes a threshold showing that the

ctronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

person is claiming Identity Theft as defined in this Agreement by answering the following multiple choice questions (to be asked by an operator or prompted on the Settlement website):

1)    Do you believe that you are *already* the victim of identity theft?

a) Yes.  I am already a victim of identity theft. *(If this option is selected, go to question 2).*

b) No, but I'm worried that I could be the victim of identity theft in the future. *(If this option is selected, the operator or website will explain that the type of information believed to have been stolen from Schnucks is limited to credit card numbers and expiration dates and that the settlement only pays for actual out-of-pocket losses or for individuals who have actually had fraudulent charges on their accounts).*

2)    What type(s) of identity theft do you believe occurred as a result of the Schnucks incident? (Check all that apply.)

a) Someone stole my credit or debit card number and then made unauthorized charges to my account.  *(If ONLY this option is selected, then explain that the claimant should fill out either Claim Form A, out-of-pocket expenses and reserved or repaid fraudulent charges claim form, or Claim Form B, reversed or repaid fraudulent charges only claim form.)*

b) Someone opened new accounts in my name without my permission.  *(If this option is selected, then go to question 3.)*

c) Someone caused me to lose money or to go into debt by pretending to be me other than by making unauthorized charges to my credit card or debit card account.  *(If this option is selected, then go to question 3.)*

3)    Did you file a written report with the police or other law enforcement documenting that you reported you believe you have been the victim of identity theft?

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

a) Yes (*If this option is selected, then provide Claim Form C, the Identity Theft claim form.*)

b) No (*If this option is selected, the operator or website will explain that a written report showing that a report of identity theft was made to law enforcement is required in order for the settlement to cover claims for identity theft. If the class member has not yet done so, they can still do so, and that report will be sufficient to proceed.*)

2.3.2   Claimants must exhaust all applicable insurance policies, including, if coverage is provided for and available, homeowner's insurance, credit monitoring insurance, and identity theft insurance, before Schnucks is responsible for any Identity Theft Reimbursement claimed pursuant to this Settlement Agreement. A claimant's filing of a claim with an insurance provider for an alleged loss, and the approval of same by the insurance provider, shall be deemed to have exhausted that portion of their claimed loss that is paid by the insurance company, except to the extent that the partial payment and partial denial of the claim by the insurance provider was based upon a determination that the claimant's claim was not well founded in part; and in that event, the claimant shall have no right to proceed for the denied portion under this Settlement Agreement.   The denial of any such claim by the insurance provider, if based upon a determination that while there was coverage for the concerned Identity Theft loss under the concerned policy, that the claimant's claim was invalid, i.e., lacking in substantive proof of the loss, such determination shall foreclose the availability of any claim by the Settlement Class Member under this provision. Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.   To be valid, claims alleging Identity Theft discovered prior to the first publication of notice must be made within 120 days of the first publication of notice and claims alleging Identity Theft discovered after the first publication of notice must be made within 120

days of such discovery, but in no event later than December 31, 2014. Claims for Identity Theft Reimbursement shall not include any amounts for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement. The claimant must disclose each other notice of a breach of their Personal Information they received in the three year period that proceeded the date of their claim hereunder; if they have received no such notice, they must so state.

2.3.3   The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether:   (1) the claimant is a Settlement Class Member; (2) the claimant has provided all information needed to complete the Identity Theft Reimbursement claim form; and (3) the information submitted, if true, could lead a reasonable person to believe that more likely than not the claimant has suffered Identity Theft related to the Security Incident (collectively, "Facially Valid"). The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, e.g., information regarding the claimed Identity Theft, available insurance, claims previously made for Identity Theft and the resolution thereof, the status and resolution of claims made against insurance for Identity Theft, including any Identity Theft claimed to be a result of the Security Incident. If the Claims Administrator requests such Claim Supplementation, the claimant shall provide it to the Claims Administrator within forty-five (45) days of the request. In the event of unusual circumstances interfering with compliance during that period, the claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension during which to comply.

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

ctronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

2.3.4   If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, then the claim shall be paid. If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Identity Theft Reimbursement claim form, then the Settlement Administrator may reject the claim without any further action.  Otherwise, the claim shall be referred to the Claims Referee. Any claimant referred to the Claims Referee shall reasonably cooperate with the Claims Referee. If the Claims Referee determines, after reasonable investigation, that any Identity Theft suffered by the claimant is more likely than not the result of the Security Incident, then the claim shall be paid. If the Claims Referee determines, after reasonable investigation, that any Identity Theft suffered by the claimant is not likely the result of the Security Incident, then the claim shall not be paid and the Claims Referee's decision will be final.

2.3.5   Total aggregate payments made by Schnucks pursuant to this paragraph shall be made on a first-valid-claim-received basis, and Schnucks shall only be obligated to pay a maximum of $300,000 for such claims and all administrative expenses associated with the receipt, review, and payment of those claims.

2.4    Aggregate Cap.  Total aggregate payments made by Schnucks under ¶¶ 2.1, 2.2, and 2.6 shall be subject to an aggregate cap of $1,600,000 (the "Aggregate Cap").  Claims made under ¶ 2.1 are to be given highest priority, then Settlement Expenses under ¶ 2.6, and then claims made under ¶ 2.2, as follows: If the total amount of Administrative Expenses, plus the value of Approved Claims under ¶ 2.1, exceeds the Aggregate Cap, then the amount of Administrative Expenses that may be deducted from the Aggregate Cap shall be limited to an amount that will ensure that all Approved Claims under ¶ 2.1 will be paid.  If the amount of Approved Claims under ¶ 2.1 exceeds the Aggregate Cap, payments for such claims shall be reduced pro-rata in proportion to the amount of each Approved Claim. If the total value of all

602535484.13

Administrative Expenses, plus Approved Claims submitted under ¶ 2.1 does not exceed the aggregate cap, but the total value of Administrative Expenses, plus Approved Claims submitted under ¶¶ 2.1 and 2.2, collectively, exceeds the Aggregate Cap, then payments for claims made under ¶ 2.2 shall be reduced pro-rata in proportion to the amount of each Approved Claim. However, notwithstanding the Aggregate Cap, valid claims made under ¶ 2.2 shall in no event be reduced to less than $5 for each credit card or debit card on which fraudulent charges were posted as a result of the Security Incident.

2.5    Dispute Resolution for Claims.

2.5.1    Upon receipt of an incomplete or unsigned claim form, the Claims Administrator shall request additional information ("Claim Supplementation") and give the claimant 15 days to cure the defect before rejecting the claim. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.5.2    Following the Effective Date, the Claims Administrator shall have thirty (30) days to accept, in whole or lessor amount, or reject claims submitted under ¶¶ 2.1 and 2.2, or identify in writing to the Settlement Class Member, with copies sent to Proposed Co-Lead Settlement Class Counsel upon request, such consents, rejections, and requests for Claim Supplementation as the Claims Administrator may reasonably request. If the Claims Administrator requests Claim Supplementation, the Settlement Class Member shall provide it to the Claims Administrator within thirty (30) days of the request.  In the event of unusual circumstances interfering with compliance during that period, the Settlement Class Member may request and, for good cause shown (illness, out of the country, mail failures, military service restrictions, lack of cooperation of third parties in possession of required information, etc.), the Claims Administrator in its discretion to be reasonably exercised may provide a reasonable extension.  In no event shall the deadline be extended to later than one year from the Effective Date. The Claims Administrator

602535484.13

shall have thirty (30) days from receipt of the Claim Supplementation to accept the claim, in whole or lessor amount, or reject the claim. Settlement Class Members shall have 15 days from receipt of the offer to accept or reject any offer received from the Claims Administrator.

2.5.3   The Claims Administrator shall then have 15 days to reconsider its initial adjustment amount and make a final determination. If the final determination is approved by the claimant, then the approved amount shall be the amount to be paid. If the final determination is not approved by the claimant within 15 days, then the dispute will be submitted to the Claims Referee within 10 days.  If any dispute is submitted to the Claims Referee, the Claims Referee may approve the Claims Administrator's determination by making a ruling within 15 days, or by making a ruling or extending the time for making a ruling for an additional 15 days, or such other time as the Claims Referee orders not to exceed an additional 30 days, to make a final determination on that dispute. The Claims Referee's decision will be final and non-appealable.

2.6   <u>Settlement Expenses</u>.  All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3 (except those related to Identity Theft Claims under ¶ 2.3), and the costs of Dispute Resolution described in ¶ 2.5, shall be paid by Schnucks.  Schnucks shall have the right to apply the costs of notice and Costs of Claims Administration toward the Aggregate Cap in ¶ 2.4, but only after all Approved Claims under ¶ 2.1 have been paid.  Any administrative expenses associated with the handling, evaluation, and payment of any Identity Theft claims shall be applied separately toward the separate cap set forth in ¶ 2.3.

2.7   <u>Settlement Class Certification</u>. The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and

- 18 -

the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

2.8    <u>Confidentiality of Information Submitted by Settlement Class Members</u>. Information submitted by Settlement Class Members pursuant to ¶¶ 2 through 2.7 of this Settlement Agreement shall be deemed confidential and protected as such by Schnucks, the Claims Administrator, and the Claims Referee.

**3.    Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Proposed Co-Lead Settlement Class Counsel and counsel for Schnucks shall jointly submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit G, or an order substantially similar to such form in both terms and cost, requesting, *inter alia*:

a)    certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.7;

b)    preliminary approval of the Settlement Agreement as set forth herein;

c)    appointment of Proposed Co-Lead Settlement Class Counsel as Co-Lead Settlement Class Counsel;

d)    appointment of Representative Plaintiffs as Class Representatives;

e)    approval of the publication of a customary form of summary notice (the "Summary Notice") in a form substantially similar to the one attached hereto as Exhibit D (in a manner certified by the Notice Specialist to have a reach sufficient to satisfy due process standards and targeted to adults

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

with credit or debit cards over 18 years of age in the United States who are reasonably likely to have shopped at an affected Schnucks store), and a customary long form of notice ("Notice") in a form substantially similar to the one attached hereto as Exhibit E, which together shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

f)   appointment of Hilsoft as Notice Specialist or such other Notice Specialist as jointly agreed to by the Settling Parties;

g)   appointment of Garden City Group, Inc. as Claims Administrator, or such other provider of claims administrative service, as may be jointly agreed to by the Settling Parties;

h)   approval of claim forms substantially similar to those attached hereto as Exhibits A, B, and C. *See* ¶¶ 2.1, 2.2, and 2.3, above; and

i)   appointment of a Person proposed by the Settling Parties to serve as Claims Referee.

The Summary Notice, Notice and Claim Forms shall be reviewed by the Notice Specialist and Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2   Schnucks shall pay for, and assume the administrative responsibility of, providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration, attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel, and incentive awards to Class Representatives, shall be paid by Schnucks, subject to the terms set forth herein. Notice shall be provided to Settlement Class Members via Internet publication on Schnucks' website, publication in print in newspapers or other media, and other notice as determined advisable by the Notice Specialist. The notice plan shall be subject to approval by the Court as meeting constitutional due process requirements. The Claims Administrator shall establish a

602535484.13

dedicated settlement website and shall maintain and update the website throughout the claim period, with the forms of Summary Notice, Notice and Claim Forms approved by the Court, as well as this Settlement Agreement. A toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class Members' inquiries. The Claims Administrator also will provide copies of the forms of Summary Notice, Notice and Claim Forms approved by the Court, as well as this Settlement Agreement, upon request. Prior to the Final Fairness Hearing, Proposed Co-Lead Settlement Class Counsel and Schnucks shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice. The Summary Notice, Notice and Claim Forms approved by the Court may be adjusted by the Notice Specialist and/or Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval.  The Notice Program shall commence approximately 60 days after expiration of the deadline for Plaintiffs' Counsel to void this agreement pursuant to ¶ 10.4 and shall be completed no later than 90 days before the date of the Final Fairness Hearing.

3.3    Proposed Co-Lead Settlement Class Counsel and Schnucks' counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

4.    **Opt-Out Procedures**

4.1    Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator.  The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked at least twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing.

602535484.13

4.2    All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3    In the event that within 10 days after the exclusion deadline as approved by the Court, that there has been 2,000 or more Opt-Outs (exclusions), Schnucks may, by notifying Proposed Co-Lead Settlement Class Counsel in writing, void this Settlement Agreement. If Schnucks voids the Settlement Agreement pursuant to this Paragraph, Schnucks shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel and incentive awards and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## 5.    Objection Procedures

5.1    Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection. Such notice shall state: (i) the objector's full name, address, telephone number and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (*e.g.*, a receipt showing a purchase made during the relevant time period from one of the stores that had compromised payment card information or an appropriate affidavit in lieu of such a receipt if the objector does not have such a receipt); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the

602535484.13

electronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. To be timely, written notice of an objection in the appropriate form must be filed with the  Clerk of the St. Louis Circuit Court, 10 N. Tucker Blvd., St. Louis, Missouri 63101, twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and served concurrently therewith upon Proposed Co-Lead Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, and John S. Steward, Steward Law Firm, LLC, 1717 Park Avenue, St. Louis, MO 63104; and counsel for Schnucks, Paul G. Karlsgodt, BakerHostetler, 303 East 17th Avenue, Suite 1100, Denver, CO 80203.

    5.2    Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The

Electronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the Final Approval Order, or the Judgment shall be pursuant to appeal under the Missouri Supreme Court Rules and not through a collateral attack.

### 6.    Releases

6.1    Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

6.2    Upon the Effective Date, Schnucks shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement. Any other Claims or defenses Schnucks may have against such Persons including, without limitation, any Claims based upon or arising out of any retail, banking, debtor-creditor, contractual or other business relationship with such Persons that are not based upon or do not arise out of the institution,

602535484.13

prosecution, assertion, settlement or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

6.3     Notwithstanding any term herein, neither Schnucks, nor its Related Parties, shall have or shall be deemed to have released, relinquished or discharged any Claim or defense against any Person other than Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel.

**7.     Plaintiffs' Counsel's Attorneys' Fees, Costs and Expenses; Incentive Awards to Representative Plaintiffs**

7.1     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive awards to Representative Plaintiffs, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that Schnucks would pay reasonable attorneys' fees, costs, expenses and incentive awards to Representative Plaintiffs as may be agreed to by Schnucks and Proposed Co-Lead Settlement Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court. Schnucks and Proposed Co-Lead Settlement Class Counsel then negotiated and agreed as follows:

7.2     Schnucks has agreed to pay, subject to Court approval, up to the amount of $635,000 to Proposed Co-Lead Settlement Class Counsel for attorneys' fees, and additionally, reasonable costs and expenses. Proposed Co-Lead Settlement Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs and expenses awarded by the Court among Plaintiffs' Counsel.

7.3     Subject to Court approval, Schnucks has agreed to pay incentive awards in the amount of $500 for each Representative Plaintiff.

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

Electronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

7.4    Within ten (10) days after the Effective Date, Schnucks shall pay the attorneys' fees, costs, expenses and incentive awards to Representative Plaintiffs, as set forth above in ¶¶ 7.2 and 7.3, to an account established by Proposed Co-Lead Settlement Class Counsel. Proposed Co-Lead Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs and expenses among Plaintiffs' Counsel and incentive awards to Representative Plaintiffs consistent with ¶¶ 7.2 and 7.3.

7.5    The amount(s) of any award of attorneys' fees, costs and expenses, and the incentive awards to Representative Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses and/or incentive awards ordered by the Court to Proposed Co-Lead Settlement Class Counsel or Representative Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.    Administration of Claims**

8.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶¶ 2.1, 2.2, and 2.3. Proposed Co-Lead Settlement Class Counsel and Schnucks shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Claims Administrator's and Claims Referee's, as applicable, determination of the validity or invalidity of any such claims shall be binding, subject to the dispute resolution process set forth in ¶¶ 2.3 and 2.6. All claims agreed to be paid in full by Schnucks shall be deemed valid.

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

8.2      Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.3      No Person shall have any claim against the Claims Administrator, Claims Referee, Schnucks, Proposed Co-Lead Settlement Class Counsel, Plaintiffs' Counsel, and/or Schnucks' counsel based on distributions of benefits made substantially in accordance with the Settlement Agreement and the settlement contained herein, or further order(s) of the Court.

## 9.    Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

9.1      The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)      the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)      Schnucks has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

c)      the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)      the Judgment has become Final, as defined in ¶ 1.9.

9.2      If all of the conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Proposed Co-Lead

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

Settlement Class Counsel and Schnucks' counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3    Within seven (7) days after the deadline established by the Court for Persons to request exclusion from the Settlement Class, the Claims Administrator shall furnish to Proposed Co-Lead Settlement Class Counsel and to Schnucks' counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4    In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.  Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses and/or incentive awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Schnucks shall be obligated to pay all Settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel and incentive awards, and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

692535484.13

**10.    Miscellaneous Provisions**

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or

602535484.13

Electronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    Representative Plaintiffs shall be entitled to reasonable confirmatory discovery from Schnucks to be conducted by Proposed Co-Lead Settlement Class Counsel, members of their firms, or such other Plaintiff's counsel as Proposed Co-Lead Settlement Class Counsel may designate. The period for confirmatory discovery shall, except as otherwise agreed by the Settling Parties, begin no sooner than, and shall be, except as otherwise agreed by the Settling Parties, completed within forty-five (45) days after the date of Preliminary Approval. Schnucks shall cooperate in good faith to facilitate such confirmatory discovery.  At the conclusion of confirmatory discovery, Proposed Co-Lead Settlement Class Counsel shall, based upon all facts known to them, determine in good faith whether in their opinion the settlement is fair, reasonable and adequate. If Proposed Co-Lead Settlement Class Counsel determine that the settlement is not in their opinion fair, reasonable and adequate, Proposed Co-Lead Settlement Class Counsel shall terminate the Settlement and give notice to Schnucks of such termination within ten (10) days after confirmatory discovery concludes. In such case, the settlement shall be null and void, and the Settling Parties shall return to their original positions. Schnucks may defer incurring costs for notice under ¶ 3.2, and/or providing such notice under ¶ 3.2, until the period for Proposed Co-Lead Settlement Class Counsel to terminate the settlement pursuant to this paragraph has expired without Proposed Co-Lead Settlement Class Counsel taking such action.

10.5    If a claim submitted under ¶¶ 2.1, 2.2, or 2.3 of this Settlement Agreement is found to be fraudulent, the claimant is subject to prosecution, both civilly and criminally, and may be found to be, *inter alia*, responsible for attorneys' fees, costs, and expenses incurred by Schnucks in defending against such fraudulent claim.

692535484.13

Electronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

10.6    All documents and materials provided by Schnucks in confirmatory discovery shall be treated as confidential and returned to Schnucks within sixty (60) days of the Effective Date.

10.7    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.8    The Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise provided herein, each party shall bear its own costs.

10.9    Proposed Co-Lead Settlement Class Counsel, on behalf of the Settlement Class, are expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.10   Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.11   The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

10.12   The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00

10.13  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.14  The Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Missouri, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Missouri without giving effect to Missouri choice of law principles.

10.15  As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.16  All dollar amounts are in United States dollars (USD).

10.17  Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks shall be void 60 days after issuance and shall bear the language: "This check must be cashed within 60 days, after which time it is void." If a check becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and any funds to which that Settlement Class Member would otherwise have been entitled shall remain part of the settlement cap amount and be distributed in accordance with the provisions of the Settlement Agreement. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than 180

602535484.13

days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.18  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

10.19  Within 5 days of the date of execution of this agreement, Plaintiffs shall file a second amended complaint that seeks relief on behalf of the Settlement Class as defined in this Settlement Agreement, and Defendant consents to that filing.

10.20  This Settlement Agreement may be executed prior to the completion of Exhibits D, E, F, and G.  However, the Agreement shall become void if the parties do not agree to the form of those exhibits within 5 days from the date of execution, provided that consent shall not be unreasonably withheld.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*Proposed Co-Lead Settlement Class Counsel*

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
312-621-2000
312-641-5504 fax
b.barnow@barnowlaw.com

John S. Steward, #45932 *by permission*
STEWARD LAW FIRM, LLC
1717 Park Ave.
St. Louis, Missouri 63104
314-571-7134
314-595-5950 fax
Glaw123@aol.com

*Counsel for Schnuck Markets, Inc., and Duly Authorized Signatory*

Paul G. Karlsgodt
BAKER & HOSTETLER LLP
303 East 17th Avenue, Suite 1100
Denver, CO 80203-1264
303-764-4013
303-861-7805 fax
pkarlsgodt@bakerlaw.com

- 33 -

602535484.13

ectronically Filed - City of St. Louis - October 01, 2013 - 07:10 PM GMT+00:00