Exhibit C

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

| | | |
|---|---|---|
| Susan McGann, Mary Lowe, Joseph<br>Lumetta, Steven Kane, Darrius Stewart,<br>Sarah Lamb, Steve Skurat, Kristen<br>MacDonald, and John Gaffigan,<br>individually and on behalf of<br>all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>Schnuck Markets, Inc., a Missouri<br>Corporation,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No. 1322-CC00800<br><br>Division: 2 |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of July 1, 2014, is made and entered into by and among the following Settling Parties (as defined below): (i) Susan McGann, Mary Lowe, Joseph Lumetta, Steven Kane, Darrius Stewart, Sarah Lamb, Steve Skurat, Kristen MacDonald, and John Gaffigan ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through Ben Barnow, Barnow and Associates, P.C., and John S. Steward, Steward Law Firm LLC (together, "Proposed Co-Lead Settlement Class Counsel" or "Class Counsel"); and (ii) Schnuck Markets, Inc. ("Schnucks"), by and through its counsel of record, Theodore Kobus, Daniel Warren, Paul Karlsgodt, and Craig Hoffman of Baker & Hostetler LLP, and Kevin Hormuth of Greensfelder, Hemker & Gale, P.C. The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I.     THE LITIGATION

On March 30, 2013, Schnucks announced that its computer systems had been compromised by an individual or group of individuals who had planted a malicious computer code on its systems (the "Security Incident"). The Security Incident involved the insertion of malicious computer code that targeted data in the magnetic stripe of payment cards swiped at certain affected Schnucks stores. Subsequently, a number of lawsuits, including this lawsuit, were filed asserting claims against Schnucks relating to the Security Incident.[1]

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Schnucks relating to the Security Incident, by and on behalf of Representative Plaintiffs and Settlement Class Members (as defined below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against Schnucks relating to the Security Incident (collectively, the "Litigation").

## II.     CLAIMS OF REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLEMENT

Representative Plaintiffs believe the claims asserted in the Litigation, as set forth in the petitions, have merit. Representative Plaintiffs and Proposed Co-Lead Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Schnucks through motion practice, trial, and potential appeals. They have also taken into account the uncertain outcome and risk of further

---

[1] *See Domiano v. Schnuck Markets, Inc.*, Case No. 4:13-cv-00683-JAR (E.D. Mo.); *Akelaitis v. Schnuck Markets, Inc.*, Case No. 3:13-cv-50142 (N.D. Ill.); *Rippy v. Schnuck Markets, Inc.*, Case No. 3:13-cv-00471 (S.D. Ill.); *Atteberry v. Schnuck Markets, Inc.*, Case No. 13-cv-2112 (C.D. Ill.); *Castellano v. Schnuck Markets, Inc.*, Case No. 4:13-cv-01201-RWS (E.D. Mo.).

litigation, as well as the difficulties and delays inherent in such litigation. Proposed Co-Lead Settlement Class Counsel are highly experienced in data breach litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Schnucks denies each and all of the claims and contentions alleged against it in the Litigation. Schnucks denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, Schnucks has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Schnucks also has taken into account the uncertainty and risks inherent in any litigation. Schnucks has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Representative Plaintiffs, individually and on behalf of the Settlement Class, by and through Proposed Co-Lead Settlement Class Counsel, and Schnucks that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members

who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1.    Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Agreement" or "Settlement Agreement" means this agreement.

1.2    "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution process.

1.3    "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.4    "Claims Administrator" means Garden City Group, Inc., or such other company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation, as may be jointly agreed upon by the Settling Parties and approved by the Court.

1.5    "Claims Referee" means a third party designated by agreement of the Settling Parties and approved by the Court to make final decisions about disputed claims for settlement benefits.

1.6    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.7    "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.8    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.9 hereof have occurred and been met.

1.9    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review. Notwithstanding the above, any order modifying or reversing any attorneys' fee award or incentive award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.10    "Judgment" means a judgment rendered by the Court, in the form attached hereto as Exhibit E, or a judgment substantially similar to such form.

1.11    "Notice Specialist" means Hilsoft Notifications or such other notice specialist with recognized expertise in class action notice generally and data breach litigation specifically, as may be jointly agreed upon by the Settling Parties and approved by the Court.

1.12    "Opt-Out Date" means the date by which Settlement Class Members must mail their requests to be excluded from the Settlement Class in order for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.13    "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.14    "Plaintiffs' Counsel" means Proposed Co-Lead Settlement Class Counsel and Joseph V. Neill, Attorney at Law, and Geoffrey S. Meyerkord, Meyerkord & Meyerkord, LLC.

1.15    "Preliminary Approval Order" means the Order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class. The Settling Parties' proposed form of Preliminary Approval Order is attached hereto as Exhibit D.

1.16    "Proposed Co-Lead Settlement Class Counsel" and "Class Counsel" mean Ben Barnow, Barnow and Associates, P.C., and John S. Steward, Steward Law Firm LLC.

1.17    "Related Entities" means Schnucks' past or present directors, officers, employees, principals, agents, attorneys, insurers, predecessors, successors, parents, subsidiaries, divisions and related or affiliated entities, and includes, without limitation, any Person related to such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.18    "Released Claims" shall collectively mean any and all claims and causes of action including, without limitation, any causes of action under 18 U.S.C. § 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against Schnucks or its

- 6 -

Related Entities based on, relating to, concerning or arising out of the Security Incident and alleged theft of the Personal Information or the allegations, facts, or circumstances described in the Litigation. Released Claims shall not include the right of any Settlement Class Member or Schnucks or its Related Entities to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.19    "Released Persons" means Schnucks and its Related Entities.

1.20    "Representative Plaintiffs" means Susan McGann, Mary Lowe, Joseph Lumetta, Steven Kane, Darrius Stewart, Sarah Lamb, Steve Skurat, Kristen MacDonald, and John Gaffigan.

1.21    "Security Incident" means the cyber-attack against Schnucks' payment card processing system during the period commencing December 9, 2012 and ending March 30, 2013.

1.22    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.23    "Settlement Class" means all persons who made an authorized in-store purchase using a credit or debit card at a Schnucks store between December 9, 2012 through and including March 30, 2013. The Settlement Class specifically excludes: (i) Schnucks and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contendere* to any such charge.

1.24    "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.25    "Settling Parties" means, collectively, Schnucks and Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.26    "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Representative Plaintiff, does not know or suspect to exist in his favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and

- 8 -

Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.27    "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

## 2.    Settlement Benefits

2.1    <u>Expense Reimbursement</u>. All Settlement Class Members who submit a valid claim using the Claim Form (Exhibit A to this Settlement Agreement) are eligible for the following out-of-pocket expenses, not to exceed $200.00 per Settlement Class Member, that were incurred as a result of the Security Incident: (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) unreimbursed over-limit fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Security Incident) and text messages (if charged by the message and incurred solely as a result of the Security Incident); (ix) unreimbursed charges from banks or credit card companies; (x) postage; (xi) interest on payday loans due to card cancelation or due to over-limit situation; (xii) up to three hours of documented lost time spent dealing with replacement card issues or in reversing fraudulent charges (calculated at the rate of $10 per hour), but only if at least one full hour was spent, and only if the time can be documented with reasonable specificity by answering the questions on the Claim Form; (xiii) costs of credit report(s) purchased by Settlement Class Members between March 15, 2013 and the date of the Preliminary Approval Order (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident); and (xiv) costs of credit monitoring and identity theft protection (not to

exceed $80) purchased by Settlement Class Member between March 15, 2013 and 120 days after the first date of publication of notice (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident and not for other purposes, and with proof of purchase and payment).

Settlement Class Members seeking reimbursement under this ¶ 2.1 must complete and submit a written Claim Form to the Claims Administrator, postmarked on or before December 31, 2014. The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. Claim Form submissions must also include reasonable documentation that the out-of-pocket expenses and charges claimed were both actually incurred and more likely than not arose from the Security Incident.   Failure to provide supporting documentation of the nature requested on the Claim Form shall be grounds for denial of a claim. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.5.

2.2     Cash Payments for Claimants Who Were Notified of Fraudulent Charges Which Were Later Reversed. Any Settlement Class Member who submits a valid claim showing, to the best of his or her knowledge and belief, under penalty of perjury, that an unauthorized charge was made on his or her credit card or debit card, along with a copy of the Settlement Class Member's applicable credit card or debit card statement(s) (which may be redacted of all information other than the unlawful charge(s), the date(s) of same), and the Settlement Class Member's name and address, showing and identifying the fraudulent charges posted to the credit card or debit card account and showing that those charges were reversed or credited, is eligible for a cash payment in an amount of $10 for each credit card or debit card on which one or more fraudulent charges were posted as a result of the Security Incident.

Settlement Class Members who submit a claim under this ¶ 2.2 may also submit a claim for any other benefit or reimbursement available to such Settlement Class Member under any other provision of this Settlement Agreement. Settlement Class Members seeking reimbursement under this ¶ 2.2 must complete and submit a written Claim Form to the Claims Administrator and postmarked on or before December 31, 2014. Disputes as to such claims are to be resolved pursuant to the provisions stated in ¶ 2.5.

2.3    <u>Other Extraordinary Expense Reimbursement</u>. Schnucks shall reimburse, as provided for below, each Settlement Class Member in the amount of his or her proven loss, but not to exceed $10,000 per claim (and only one claim per Settlement Class Member), for a monetary out-of-pocket loss that is claimed and proven by the Settlement Class Member to have occurred more likely than not as a result of the Security Incident, regardless of whether said Settlement Class Member elects to make a claim for any other benefit available under this Settlement Agreement, and further that: (a) it is an actual, documented, and unreimbursed monetary loss; (b) was more likely than not caused by the Security Incident; (c) occurred during the time period from December 9, 2012 through and including the end of the applicable claims period (*see* 2.3.2, *infra*); (d) is not already covered by Section 2.1, and (e) the claimant made reasonable efforts to avoid or seek reimbursement for the loss. Settlement Class Members with claims under this paragraph may also submit claims for benefits under Paragraphs 2.1 and 2.2.

2.3.1    Claimants seeking reimbursement for expenses or losses described in paragraph 2.3 must complete and submit the appropriate section of the Claim Form to the Claims Administrator, together with proof of such losses.

2.3.2    Claimants must exhaust all applicable insurance policies, including, if coverage is provided for and available, homeowner's insurance, credit monitoring insurance, and identity theft insurance, before Schnucks is responsible for any expenses claimed pursuant to paragraph

2.3 of this Settlement Agreement. A claimant's filing of a claim with an insurance provider for an alleged loss, and the approval of same by the insurance provider, shall be deemed to have exhausted that portion of their claimed loss that is paid by the insurance company, except to the extent that the partial payment and partial denial of the claim by the insurance provider was based upon a determination that the claimant's claim was not well founded in part; and in that event, the claimant shall have no right to proceed for the denied portion under this Settlement Agreement.    The denial of any such claim by the insurance provider, if based upon a determination that while there was coverage for the concerned loss under the concerned policy, that the claimant's claim was invalid, *i.e.*, lacking in substantive proof of the loss, such determination shall foreclose the availability of any claim by the Settlement Class Member under this provision.  Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.  To be valid, claims for extraordinary expenses must be complete and submitted to the Claims Administrator, postmarked on or before December 31, 2014.  No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement. For claims in excess of $200, the Settlement Administrator may request, and the claimant must disclose upon request, each other notice of a breach of their Personal Information they received in the three year period that preceded the date of their claim hereunder; if the claimant has received no such notice, the claimant must so state.

2.4    Settlement Caps.  Total aggregate payments made by Schnucks under ¶¶ 2.1, 2.2, and 2.3 shall be subject to an aggregate cap of $2,100,000 (the "Aggregate Cap").  The structure of the caps under this agreement are intended to ensure that up to $500,000 is available to pay Approved Claims under ¶ 2.3, at least $1,600,000 and up to $2,100,000 is available to pay

Approved Claims under ¶ 2.1, and all Approved Claims under ¶ 2.2 are paid in an amount of up to $10 but at least $5 per each credit card or debit card on which fraudulent charges were posted as a result of the Security Incident.

2.4.1 The first $500,000 of funds available under the Aggregate Cap shall be made available for payment of Approved Claims made under ¶ 2.3 ("Extraordinary Expense Cap"). If the total amount of Approved Claims for expenses described in paragraph 2.3 exceeds the Extraordinary Expense Cap, then those claims shall be reduced pro-rata in proportion to the amount of each Approved Claim.

2.4.2 The remaining $1,600,000 under the Aggregate Cap, plus the amount remaining under the Extraordinary Expense Cap that that is not claimed, if any, shall be made available to pay Approved Claims under ¶¶ 2.1 and 2.2 (the "Remaining Cap"). In distributing funds available under the Remaining Cap, claims for expenses made under ¶ 2.1 are to be given priority over claims made under ¶ 2.2, as follows: If the amount of Approved Claims under ¶ 2.1 exceeds the Remaining Cap, payments for such claims shall be reduced pro-rata in proportion to the amount of each Approved Claim. If the total amount of Approved Claims submitted under ¶ 2.1 does not exceed the Remaining Cap, but the total value of Approved Claims submitted under ¶¶ 2.1 and 2.2, collectively, exceeds the Remaining Cap, then payments for claims made under ¶ 2.2 shall be reduced pro-rata in proportion to the amount of each Approved Claim. However, notwithstanding the Remaining Cap, valid claims made under ¶ 2.2 shall in no event be reduced to less than $5 for each credit card or debit card on which fraudulent charges were posted as a result of the Security Incident.

2.5     <u>Dispute Resolution for Claims</u>.

2.5.1   The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether:   (1) the claimant is a Settlement Class Member; (2) the claimant has

provided all information needed to complete the Claim Form; and (3) the information submitted, if true, could lead a reasonable person to believe that more likely than not the claimant has suffered the claimed losses as a result of the Security Incident (collectively, "Facially Valid"). The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.*, documentation requested on the Claim Form, information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.

2.5.2   Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Claims Administrator shall request additional information ("Claim Supplementation") and give the claimant 15 days to cure the defect before rejecting the claim.  Requests for Claim Supplementation shall be made by January 30, 2015, or within thirty (30) days from the Effective Date, whichever is later.   In the event of unusual circumstances interfering with compliance during the 15-day period, the claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 15-day deadline in which to comply; however, in no event shall the deadline be extended to later than one year from the Effective Date.  If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.5.3   Following receipt of additional information requested as Claim Supplementation, the Claims Administrator shall have thirty (30) days to accept, in whole or lessor amount, or reject each claim.  If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, then the claim shall be

paid. If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Settlement Administrator may reject the claim without any further action. If the claim is rejected for other reasons, then the claim shall be referred to the Claims Referee.

2.5.4    Settlement Class Members shall have 15 days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have 15 days to reconsider its initial adjustment amount and make a final determination. If the final determination is approved by the claimant, then the approved amount shall be the amount to be paid. If the final determination is not approved by the claimant within 15 days, then the dispute will be submitted to the Claims Referee within an additional 10 days.

2.5.5    If any dispute is submitted to the Claims Referee, the Claims Referee may approve the Claims Administrator's determination by making a ruling within 15 days. The Claims Referee may make any other final determination of the dispute or request further supplementation of a claim within 30 days. The Claims Referee's determination shall be based on whether the Claims Referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Security Incident. The Claims Referee shall have the power to approve a claim in full or in part. The Claims Referee's decision will be final and non-appealable. Any claimant referred to the Claims Referee shall reasonably cooperate with the Claims Referee, and failure to cooperate shall be grounds for denial of the claim in full. The Claims Referee shall make a final decision within 30 days of receipt of all supplemental information requested.

2.6    <u>Settlement Expenses</u>.    All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of Dispute Resolution described in ¶ 2.5, shall be paid by Schnucks.

2.7    <u>Settlement Class Certification</u>. The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

2.8    <u>Confidentiality of Information Submitted by Settlement Class Members</u>. Information submitted by Settlement Class Members pursuant to ¶¶ 2 through 2.7 of this Settlement Agreement shall be deemed confidential and protected as such by Schnucks, the Claims Administrator, and the Claims Referee.

3.    **Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Proposed Co-Lead Settlement Class Counsel and counsel for Schnucks shall jointly submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit D, or an order substantially similar to such form in both terms and cost, requesting, *inter alia*:

a)    certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.7;

b)    preliminary approval of the Settlement Agreement as set forth herein;

c)    appointment of Proposed Co-Lead Settlement Class Counsel as Co-Lead Settlement Class Counsel;

d)    appointment of Representative Plaintiffs as Class Representatives;

e)    approval of the publication of a customary form of summary notice (the "Summary Notice") in a form substantially similar to the one attached hereto as Exhibit B (in a manner certified by the Notice Specialist to have a reach sufficient to satisfy due process standards and targeted to adults with credit or debit cards over 18 years of age in the United States who are reasonably likely to have shopped at an affected Schnucks store), and a customary long form of notice ("Notice") in a form substantially similar to the one attached hereto as Exhibit C, which together shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

f)    appointment of Hilsoft as Notice Specialist or such other Notice Specialist as jointly agreed to by the Settling Parties;

g)    appointment of Garden City Group, Inc. as Claims Administrator, or such other provider of claims administrative service, as may be jointly agreed to by the Settling Parties;

h)    approval of a claim form substantially similar to that attached hereto as Exhibit A. *See* ¶¶ 2.1, 2.2, and 2.3, above; and

i)    appointment of a Person proposed by the Settling Parties to serve as Claims Referee.

The Summary Notice, Notice and Claim Form shall be reviewed by the Notice Specialist and Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2    Schnucks shall pay for, and assume the administrative responsibility of, providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration, attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel, and incentive awards to Class Representatives, shall be paid by Schnucks, subject to the terms set forth herein. Notice shall be provided to Settlement Class Members via Internet publication on Schnucks' website, publication in print in newspapers or other media, and other notice as determined advisable by the Notice Specialist. The notice plan shall be subject to approval by the Court as meeting constitutional due process requirements. The Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the claim period, with the forms of Summary Notice, Notice and Claim Form approved by the Court, as well as this Settlement Agreement. A toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class Members' inquiries. The Claims Administrator also will provide copies of the forms of Summary Notice, Notice and Claim Form approved by the Court, as well as this Settlement Agreement, upon request. Prior to the Final Fairness Hearing, Proposed Co-Lead Settlement Class Counsel and Schnucks shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice. The Summary Notice, Notice and Claim Form approved by the Court may be adjusted by the Notice Specialist and/or Claims Administrator, respectively, in consultation

and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval.  The Notice Program shall commence on or before August 11, 2014 and shall be completed no later than 90 days before the date of the Final Fairness Hearing.

    3.3    Proposed Co-Lead Settlement Class Counsel and Schnucks' counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

**4.    Opt-Out Procedures**

    4.1    Each Person wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator.  The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class.  To be effective, written notice must be postmarked no later than one hundred twenty (120) days after the date on which the Notice Program commences pursuant to ¶ 3.2.

    4.2    All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

    4.3    In the event that within 10 days after the Opt-Out Date as approved by the Court, that there has been 2,000 or more Opt-Outs (exclusions), Schnucks may, by notifying Proposed Co-Lead Settlement Class Counsel in writing, void this Settlement Agreement. If Schnucks voids the Settlement Agreement pursuant to this Paragraph, Schnucks shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of

Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel and incentive awards and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

**5.    Objection Procedures**

5.1 Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection.  Such notice shall state: (i) the objector's full name, address, telephone number and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (*e.g.*, a receipt showing a purchase made during the relevant time period from one of the stores that had compromised payment card information or an appropriate affidavit in lieu of such a receipt if the objector does not have such a receipt); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who will appear at the Final Fairness Hearing; (vi) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (vii) a statement confirming whether the objector intends to personally appear and/or testify at the Final Fairness Hearing; (viii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (ix) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (x) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xi) a list, by case name, court, and docket

number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or class representative. To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the St. Louis Circuit Court, 10 N. Tucker Blvd., St. Louis, Missouri 63101, no later than one hundred twenty (120) days from the date on which the Notice Program commences pursuant to ¶ 3.2, and served concurrently therewith upon Proposed Co-Lead Settlement Class Counsel, Ben Barnow, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, and John S. Steward, Steward Law Firm, LLC, 1717 Park Avenue, St. Louis, MO 63104; and counsel for Schnucks, Paul G. Karlsgodt, BakerHostetler, 1801 California Street, Suite 4400, Denver, Colorado 80202-2662.

5.2    Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1. Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the judgment to be entered upon final approval shall be pursuant to appeal under the Missouri Supreme Court Rules and not through a collateral attack.

**6.    Releases**

6.1    Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class

Member, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

6.2    Upon the Effective Date, Schnucks shall be deemed to have, and by operation of the Judgment shall have, fully, finally and forever released, relinquished and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement. Any other claims or defenses Schnucks may have against such Persons including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

6.3    Notwithstanding any term herein, neither Schnucks, nor its Related Parties, shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel.

**7.    Plaintiffs' Counsel's Attorneys' Fees, Costs and Expenses; Incentive Awards to Representative Plaintiffs**

7.1    The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive awards to Representative Plaintiffs, as provided for in ¶¶ 7.2 and 7.3,

until after the substantive terms of the settlement had been agreed upon, other than that Schnucks would pay reasonable attorneys' fees, costs, expenses and incentive awards to Representative Plaintiffs as may be agreed to by Schnucks and Proposed Co-Lead Settlement Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court. Schnucks and Proposed Co-Lead Settlement Class Counsel then negotiated and agreed as follows:

7.2    Schnucks has agreed to pay, subject to Court approval, up to the amount of $635,000 to Proposed Co-Lead Settlement Class Counsel for attorneys' fees, and additionally, reasonable costs and expenses. Proposed Co-Lead Settlement Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs and expenses awarded by the Court among Plaintiffs' Counsel.

7.3    Subject to Court approval, Schnucks has agreed to pay incentive awards in the amount of $500 to each Representative Plaintiff.

7.4    Within ten (10) days after the Effective Date, Schnucks shall pay the attorneys' fees, costs, expenses and incentive awards to Representative Plaintiffs, as set forth above in ¶¶ 7.2 and 7.3, to an account established by Proposed Co-Lead Settlement Class Counsel. Proposed Co-Lead Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs and expenses among Plaintiffs' Counsel and incentive awards to Representative Plaintiffs consistent with ¶¶ 7.2 and 7.3.

7.5    The amount(s) of any award of attorneys' fees, costs and expenses, and the incentive awards to Representative Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses and/or incentive awards

ordered by the Court to Proposed Co-Lead Settlement Class Counsel or Representative Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.    Administration of Claims**

8.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶¶ 2.1, 2.2, and 2.3. Proposed Co-Lead Settlement Class Counsel and Schnucks shall be given reports as to both claims and distribution, and have the right to review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate. The Claims Administrator's and Claims Referee's, as applicable, determination of the validity or invalidity of any such claims shall be binding, subject to the dispute resolution process set forth in ¶ 2.5. All claims agreed to be paid in full by Schnucks shall be deemed valid.

8.2    Checks for approved claims shall be mailed and postmarked within 60 days of the Effective Date, or within 30 days of the date that the claim is approved, whichever is latest. If, at the time of the initial deadline for the payment of claims, the total amount of approved claims plus the total amount of disputed claims in a given category exceeds any of the settlement caps in paragraphs 2.4.1 or 2.4.2, the Claims Referee may direct the Settlement Administrator to withhold an appropriate portion of the approved claims until disputed claims are resolved. Any amounts under the applicable caps that are held back under this provision shall be paid pro rata to approved claimants within 30 days from the later of the following (1) all disputed claims are resolved, or (2) the total amount of claims paid plus amounts remaining in dispute is less than the applicable cap. With the written agreement of both parties, the Claims Referee may waive the aggregate caps in order to make a full, non-prorated settlement payment for approved claims at any time during the claims administration process.

8.3     Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4     No Person shall have any claim against the Claims Administrator, Claims Referee, Schnucks, Proposed Co-Lead Settlement Class Counsel, Plaintiffs' Counsel, and/or Schnucks' counsel based on distributions of benefits made substantially in accordance with the Settlement Agreement and the settlement contained herein, or further order(s) of the Court.

**9.     Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)     the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)     Schnucks has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

c)     the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)     the Judgment has become Final, as defined in ¶ 1.9.

9.2     If all of the conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Proposed Co-Lead

Settlement Class Counsel and Schnucks' counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3    Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Co-Lead Settlement Class Counsel and to Schnucks' counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4    In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*.  Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses and/or incentive awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Schnucks shall be obligated to pay all Settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel and incentive awards, and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

## 10.    Miscellaneous Provisions

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or

reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    All documents and materials provided by Schnucks in confirmatory discovery shall be treated as confidential and returned to Schnucks within sixty (60) days of the Effective Date.

10.5    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.6    The Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise provided herein, each party shall bear its own costs.   This agreement supersedes all previous agreements made by the parties.

10.7    Proposed Co-Lead Settlement Class Counsel, on behalf of the Settlement Class, are expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.8    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.9    The Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of original executed counterparts shall be filed with the Court.

10.10   The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.11   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.12   The Settlement Agreement shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Missouri, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Missouri without giving effect to Missouri choice of law principles.

10.13   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it."

10.14   All dollar amounts are in United States dollars (USD).

10.15   Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks shall be void 60 days after issuance and shall bear the language: "This check must be cashed within 60 days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and any funds to which that Settlement Class Member would otherwise have been entitled shall remain part of the settlement cap amount and be distributed in accordance with the provisions of the Settlement Agreement. The same provisions shall apply to

- 29 -

any re-issued check. For any checks that are issued or re-issued for any reason more than 180 days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.16  All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*Proposed Co-Lead Settlement Class Counsel*

*Counsel for Schnuck Markets, Inc., and Duly Authorized Signatory*

_____
Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
T: 312-621-2000; F: 312-641-5504
b.barnow@barnowlaw.com

_____
Paul G. Karlsgodt
BAKER & HOSTETLER LLP
303 East 17th Avenue, Suite 1100
Denver, CO 80203-1264
T: 303-764-4013; F: 303-861-7805
pkarlsgodt@bakerlaw.com

_____
John S. Steward, #45932
STEWARD LAW FIRM, LLC
1717 Park Ave.
St. Louis, Missouri 63104
T: 314-571-7134; F: 314-595-5950
Glaw123@aol.com

any re-issued check. For any checks that are issued or re-issued for any reason more than 180 days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.16   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*Proposed Co-Lead Settlement Class Counsel*

*Counsel for Schnuck Markets, Inc., and Duly Authorized Signatory*

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
T: 312-621-2000; F: 312-641-5504
b.barnow@barnowlaw.com

Paul G. Karlsgodt
BAKER & HOSTETLER LLP
303 East 17th Avenue, Suite 1100
Denver, CO 80203-1264
T: 303-764-4013; F: 303-861-7805
pkarlsgodt@bakerlaw.com

John S. Steward, #45932
STEWARD LAW FIRM, LLC
1717 Park Ave.
St. Louis, Missouri 63104
T: 314-571-7134; F: 314-595-5950
Glaw123@aol.com

any re-issued check. For any checks that are issued or re-issued for any reason more than 180 days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.16   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

*Proposed Co-Lead Settlement Class Counsel*

*Counsel for Schnuck Markets, Inc., and Duly Authorized Signatory*

---

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
T: 312-621-2000; F: 312-641-5504
b.barnow@barnowlaw.com

---

Paul G. Karlsgodt
BAKER & HOSTETLER LLP
303 East 17th Avenue, Suite 1100
Denver, CO 80203-1264
T: 303-764-4013; F: 303-861-7805
pkarlsgodt@bakerlaw.com

John S. Steward, #45932
STEWARD LAW FIRM, LLC
1717 Park Ave.
St. Louis, Missouri 63104
T: 314-571-7134; F: 314-595-5950
Glaw123@aol.com

- 30 -